ROSEN & ASSOCIATES, P.C.
Proposed Attorneys for the Debtor
 and Debtor in Possession
747 Third Avenue
New York, NY 10017-2803
(212) 223-1100
Sanford P. Rosen
Alice P. Ko

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
In re                                                                    Chapter 11

PRETTY GIRL OF FORDHAM ROAD CORP.        Case No. 17-11600 (SHL)
d/b/a PRETTY GIRL,

                                              Debtor.
-------------------------------------------------------------x

**MOTION OF THE DEBTOR AND DEBTOR IN POSSESSION**
**FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING THE**
**USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION,**
**AND (III) SCHEDULING A FINAL HEARING ON THE MOTION**

    Pretty Girl of Fordham Road Corp. d/b/a Pretty Girl, the above-captioned debtor and debtor in possession (the "**Debtor**"), by its proposed attorneys, Rosen & Associates, P.C., respectfully represents:

**PRELIMINARY STATEMENT**

    1.  By this Motion (the "**Motion**"), the Debtor seeks, pursuant to sections 361 and 363 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 4001, and 9013 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rules 4001-2 and 9013-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local**

**Rules**"), and the Guidelines for Financing Motions as set forth in General Order No. 274 of the United States Bankruptcy Court for the Southern District of New York (the "**Financing Guidelines**"), (a) the entry of an interim order (the "**Interim Order**"), substantially in the form attached hereto as Exhibit "A," (i) authorizing, on an interim basis, its use of cash collateral (as defined under section 363 of the Bankruptcy Code) (the "**Cash Collateral**") in which JPMorgan Chase Bank, NA ("**Chase**") and the City of New York (the "**City**") have an interest, (ii) granting Chase and the City adequate protection on account of such use, (iii) scheduling a final hearing on the Motion (the "**Final Hearing**"), (b) the entry of a final order (the "**Final Order**") after the Final Hearing authorizing the use of Cash Collateral on a final basis, and (c) such other and further relief as to this Court seems just and proper.

## JURISDICTION

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this case is proper in this district pursuant to 28 U.S.C.§§ 1408 and 1409.

## BACKGROUND

3. On June 9, 2017 (the "**Petition Date**"), the Debtor commenced in this Court a voluntary case under chapter 11 of the Bankruptcy Code.

4. The Debtor is operating its business and managing its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. To date, no trustee, examiner, or creditors' committee has been appointed.

## THE DEBTOR'S BUSINESS

6. The Debtor is a corporation organized under the laws of the state of New York. It maintains its corporate offices at 1407 Broadway, Suite 2300, New York, NY 10018

(the "**Offices**"). At 201-213 East Fordham Road, Bronx, NY 10458 (the "**Premises**"). The Debtor operates a retail store under the name "Pretty Girl" that sells fashionable junior, missy, and plus-size clothing, accessories, and footwear to price conscious women.

7. The Debtor is an affiliate of Pretty Girl, Inc. ("**Pretty Girl**"), which filed a voluntary petition under chapter 11 of the Bankruptcy Code in this Court on July 2, 2014 (*In re Pretty Girl, Inc.*, Case No. 14-11979 (SHL)). The chapter 11 case of Pretty Girl was converted to one under chapter 7 of the Bankruptcy Code on December 23, 2014. The Debtor also is an affiliate of 72 Fashion Corp. d/b/a Pretty Girl and 1168 Liberty Corp. d/b/a Pretty Girl, both of which have chapter 11 cases currently pending in this Court, and 16 non-debtor affiliated stores (the "**Stores**"), each of which is separately incorporated.

8. The Debtor's assets consist of its inventory, which secures its guaranty obligation to repay indebtedness in the amount of approximately $300,000 (the "**Indebtedness**") of Pretty Girl to Chase. The Indebtedness also is guaranteed by 72 Fashion Corp., 1168 liberty Corp., and each of the Stores, as well as PGNY, Inc., a non-debtor affiliate wholly owned by Albert Nigri, and Mr. Nigri. Mr. Nigri is the sole shareholder of Pretty Girl, the Debtor, 72 Fashion Corp., 1168 Liberty Corp., and the Stores.

9. Upon the conversion of Pretty Girl's chapter 11 case, Chase gave notice to Pretty Girl, declaring it to be in default of the order entered in that case authorizing the use of cash collateral in which Chase has an interest. Chase also was granted stay relief as against Pretty Girl to collect the Indebtedness. Since that time, the Debtor, 72 Fashion Corp., 1168 Liberty Corp., and the Stores have been, from time to time, making payments to Chase in reduction of the Indebtedness.

10. As of June 8, 2017, the Debtor's books and records reflect assets totaling approximately $192,000 and liabilities of approximately $657,000, exclusive of the amounts due to Chase under its guaranty.

11. On or about March 21, 2017, the Marshal of the City of New York served the Debtor with a Notice of Execution informing the Debtor that an execution (the "**Execution**") against the Debtor's personal property had been issued as a result of a judgment entered in favor of the City of New York and against the Debtor in respect of certain Environmental Control Board ("**ECB**") violations in the case *City of New York v. Pretty Girl of Fordham Road Corp.*, Marshal's Docket No. P80030. The amount of the lien arising out of the judgment and execution is approximately $218,000 as of March 29, 2017.

12. As of the commencement of the Debtor's chapter 11 case, the Execution had not yet been carried out and, therefore, the Debtor's property has not been levied upon.

13. The Debtor commenced its chapter 11 case in order to continue to operate its business at the Premises and to maintain, protect, and preserve its property.

## THE DEBTOR'S PREPETITION AGREEMENTS WITH CHASE

14. On January 28, 2011, Pretty Girl and Chase entered into a commercial loan agreement (the "**Loan Agreement**"), pursuant to which Chase made available to Pretty Girl a revolving loan (the "**Loan**") with a credit limit of $3 million and a variable interest rate of 2.490 percentage points over the LIBOR rate. The Loan is evidenced by a promissory note in the original amount of $3 million. Effective April 17, 2014, Chase converted $1 million of the revolving loan to a fixed line of credit. As of the Petition Date, a balance of approximately $300,000 was due under the Loan Agreement.

15. As discussed above, the Debtor, pursuant to a Commercial Guaranty (the "**Guaranty**"), has guaranteed Pretty Girl's obligations under the Loan Agreement as have each of the other Stores, 72 Fashion Corp., 1168 Liberty Corp., PGNY, Inc., and Mr. Nigri.

16. To secure the Debtor's obligation under the Guaranty, the Debtor and Chase entered into a Commercial Security Agreement, pursuant to which the Debtor granted to Chase and Chase has and holds a duly perfected first priority security interest in and lien upon substantially all of the Debtor's business assets, including, but not limited to, accounts, equipment, inventory, chattel paper, general intangibles, all negotiable and nonnegotiable documents of title, and all notes, drafts, instruments, documents, securities, cash, letters of credit, advices of credit, and other property owned by the Debtor, without regard to whether such property is received in pledge for safekeeping, as agent for collection or otherwise, plus all accessions, additions, replacements, and substitutions relating to any of the foregoing, all records of any kind relating to any of the foregoing, and all proceeds relating to any of the foregoing (including insurance proceeds) (collectively, the "**Prepetition Collateral**").

## THE JUDGMENT LIEN

17. As discussed above, the City of New York has issued an execution against the Debtor based on a judgment entered in favor of the City and against the Debtor based on certain ECB violations, resulting in a judgment lien on the Debtor's personal property. The Debtor believes that the property subject to the City's judgment lien is identical to the Prepetition Collateral. Accordingly, the City has a junior lien on the Prepetition Collateral, and, thus, also has an interest in the Cash Collateral.

## NEED FOR USE OF CASH COLLATERAL

18. The Debtor requires the use of Cash Collateral in which Chase and the City have an interest for the purposes set forth in the budget (the "**Interim Budget**") annexed hereto as Exhibit "B," and to carry out its daily business operations; it has no alternative source of revenue to draw upon. The Debtor's ability to purchase inventory, pay rent and administrative expenses, maintain business relationships with vendors, suppliers, and customers, pay payroll and other direct operating expenses, and otherwise finance operations is essential to the Debtor's continued viability.

19. Consequently, the Debtor has an immediate need to use Cash Collateral to avoid irreparable harm. If the Debtor is unable to spend proceeds of Prepetition Collateral, the Debtor will not be able to continue the operation of its business.

## ADEQUACY OF THE INTERIM BUDGET

20. The Debtor has prepared the Interim Budget, which it believes is adequate to maintain business operations and pay all administrative expenses due and payable during the period between the entry of the Interim Order and the entry of a Final Order. The Debtor estimates this time period will be approximately 14 days. In accordance with the Interim Budget, the Debtor seeks to use approximately _____, which represents the Debtor's projected revenue and income for this interim time period.

## CONCISE STATEMENT OF THE MATERIAL TERMS OF THE ORDER

21. In accordance with Bankruptcy Rule 4001(b), Local Rule 4001-2, and the Financing Guidelines, below is a concise statement of the relief requested with respect to the Debtor's proposed use of Cash Collateral:

| Summary of Material Terms of the Order | | Location |
|---|---|---|
| **Entities with Interest in Cash Collateral:**<br><br>Fed. R. Bankr. P. 4001(b)(1)(B)(i) | J.P. Morgan Chase Bank, NA; The City of New York | Order at Preamble |
| **Amount of Cash Collateral Sought:**<br><br>Local Rule 4001-2(a)(1)<br><br>Financing Guidelines § I(A)(2)(a) | In accordance with the Interim Budget, the Debtor seeks to use approximately $41,000 during the period between the entry of the Interim Order and the entry of a Final Order, which the Debtor estimates will be approximately fourteen (14) days. | Order ¶¶ 2-3 |
| **Purposes for Use of Cash Collateral:**<br><br>Fed. R. Bankr. P. 4001(b)(1)(B)(ii) | The Debtor seeks to use the Cash Collateral in accordance with the Interim Budget to continue its business operations in the ordinary course. | Order ¶ 3 |
| **Termination Date:**<br><br>Fed. R. Bankr. P. 4001(b)(1)(B)(iii) | Unless there is a default in the Interim Order, the Debtor is authorized to use the Cash Collateral through the date that is 14 days after the date of entry of the Interim Order or until such later time as to which Chase and the City consent in writing or as the Court may permit, subject to the terms and conditions set forth in the Interim Order. | Order ¶ 2 |
| **Adequate Protection:**<br><br>Fed. R. Bankr. P. 4001(b)(1)(B)(iv)<br><br>Financing Guidelines § I(A)(2)(d) | The Replacement Liens (as defined below) shall serve as adequate protection pursuant to sections 361 and 363 of the Bankruptcy Code.<br><br>To the extent the Replacement Liens and other relief granted to Chase and the City in the Interim Order do not provide Chase and/or the City with adequate protection of their respective interests in the Cash Collateral, Chase and/or the City will have a super-priority administrative expense claim (the "**Super-Priority Claims**") under | Order ¶¶ 4, 5, 7 |

7

| | | |
|---|---|---|
| | section 507(b) of the Bankruptcy Code. | |
| **Carve-Out:**<br><br>Financing Guidelines<br>§ I(A)(2)(d) | The Replacement Liens and the Super-Priority Claims shall be subordinate to the fees payable to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a), plus applicable interest on any such fees, and the administrative expenses, not to exceed $10,000, of a trustee in a superseding case under chapter 7 of the Bankruptcy Code. | Order ¶ 8 |
| **Effect on Existing Liens:**<br><br>Local Rule 4001-2(a)(4)<br><br>Financing Guidelines<br>§ I(A)(2)(d) | No effect. | N/A |
| **Events of Default:**<br><br>Financing Guidelines<br>§ I(A)(2)(e) | (i) Entry of any order dismissing the within proceeding or converting the within proceeding to chapter 7 of the Bankruptcy Code;<br><br>(ii) Entry of an order authorizing the appointment of a chapter 11 trustee, or examiner with expanded powers;<br><br>(iii) Entry of an order modifying or vacating the automatic stay in favor of Chase or the City; and/or<br><br>(iv) At 11:59 p.m. on the date that is 14 days after the date of entry of the Interim Order, unless further extended by written consent of Chase and the City or by order of this Court. | Order ¶ 9 |

22. Bankruptcy Rule 4001(b)(2) provides that a final hearing on a motion for the authority to use cash collateral may not be commenced earlier than 14 days after the service of such motion. Upon request, however, a bankruptcy court is empowered to conduct a

8

preliminary expedited hearing on the motion and authorize the use of cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.

23. Pursuant to Bankruptcy Rule 4001(b)(2), the Debtor requests that this Court (a) conduct an interim hearing (the "**Interim Hearing**") to consider the entry of the Interim Order authorizing the Debtor, on an interim basis, to use approximately $41,000 of Cash Collateral in accordance with the Interim Budget to avoid immediate and irreparable harm to its estate pending the Final Hearing and (b) approximately 14 days thereafter, convene the Final Hearing to consider entry of the Final Order authorizing the Debtor to use Cash Collateral on a final basis.

24. Such relief is necessary to maintain ongoing operations and avoid immediate and irreparable harm and prejudice to the Debtor's estate and all parties in interest in the Debtor's chapter 11 case.

## **ADEQUATE PROTECTION**

25. As adequate protection for the Debtor's use of Cash Collateral, Chase and the City will be granted Replacement Liens (as defined below). Chase will be granted a valid, perfected, and enforceable post-petition lien on and security interest in (the "**Senior Replacement Lien**") all assets of the Debtor, as debtor in possession, of the same type and nature as constituted the Prepetition Collateral (but excluding avoidance actions arising under chapter 5 of the Bankruptcy Code) (the "**Post-Petition Collateral**"). The Senior Replacement Lien shall be subject to all other validly and properly perfected prepetition liens and security interests in favor of third parties that were senior to and had priority over Chase's security interest and lien as of the Petition Date. The Senior Replacement Lien shall be senior to the lien to be granted to the City as adequate protection, as set forth below, but subordinate to the fees

payable to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a), plus applicable interest on any such fees, and the administrative expenses, not to exceed $10,000, of a trustee in a superseding case under chapter 7 of the Bankruptcy Code.

26. The City will be granted a valid, perfected and enforceable post-petition lien on and security interest in (the "**Junior Replacement Lien**," and, together with the Senior Replacement Lien, the "**Replacement Liens**") all of the Post-Petition Collateral. The Junior Replacement Lien shall be subordinate to the Senior Replacement Lien.

27. The Replacement Liens will be subject to all other validly and properly perfected prepetition liens and security interests in favor of third parties that were senior to and had priority over Chase's and the City's respective liens and security interests as of the Petition Date. The Debtor anticipates, based on its projections, that there will be no diminution in the value, as of the Petition Date, of the Post-Petition Collateral as a result of the Debtor's use of Cash Collateral.

28. The Replacement Liens will be deemed perfected as of the Petition Date, without the necessity of filing any documents or otherwise complying with non-bankruptcy law in order to perfect security interests and record liens, with such perfection being binding upon all parties including, but not limited to, any subsequently appointed trustee either under chapter 11 or chapter 7 of the Bankruptcy Code.

29. To the extent the Replacement Liens and other relief granted to Chase and the City in the Interim Order do not provide Chase or the City with adequate protection of their interests in the Cash Collateral, Chase and/or the City will each have a super-priority administrative expense claim (the "**Super-Priority Claims**") under section 507(b) of the Bankruptcy Code. The Super-Priority Claims will have priority over all administrative expenses

incurred in the Debtor's case that are allowable under section 507(a)(2) of the Bankruptcy Code, except as otherwise provided herein.

30. The Super-Priority Claims will be subordinate only to the fees payable to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a) plus applicable interest on any such fees and the administrative expenses, not to exceed $10,000, of a trustee in a superseding case under chapter 7 of the Bankruptcy Code.

## CONCLUSION

31. The Debtor requires the use of Cash Collateral to continue to manage its property and operate its business. The continued use of the Cash Collateral will enable it to preserve and enhance the value of its assets and business for the benefit of all parties in interest.

## NOTICE

32. In accordance with Bankruptcy Rule 4001(b)(3), the Local Rules, and General Order M-274, notice of this Motion and the preliminary hearing will be provided to: (a) the Office of the United States Trustee; (b) counsel for Chase; (c) counsel for the City; (d) any official committee appointed in this case; and (e) all persons who have filed a request for notice and service of papers in this case. Upon entry of the Interim Order, the Debtor shall provide a copy of the Motion and the Interim Order, which shall constitute adequate notice of the Final Hearing, upon the same parties, plus the Debtor's 20 largest unsecured creditors.

33. The Debtor respectfully submits that no other or further notice need be provided.

## NO PRIOR REQUEST

34. No previous application for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtor respectfully requests that this Court: (i) enter the Interim Order substantially in the form annexed hereto as Exhibit "A"; (ii) schedule the Final Hearing; (iii) enter, after the Final Hearing, the Final Order; and (iv) grant it such other and further relief as this Court deems just and proper.

Dated: New York, New York
      June 9, 2017

ROSEN & ASSOCIATES, P.C.
Proposed Attorneys for the Debtor
 and Debtor in Possession

By: /s/ Alice P. Ko
     Alice P. Ko

747 Third Avenue
New York, NY 10017-2803
(212) 223-1100