ROSEN & ASSOCIATES, P.C.
Proposed Attorneys for the Debtor
 and Debtor in Possession
747 Third Avenue
New York, NY 10017-2803
(212) 223-1100
Sanford P. Rosen
Alice P. Ko

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

| | |
|---|---|
| In re | Chapter 11 |
| | |
| PRETTY GIRL OF FORDHAM ROAD CORP. d/b/a PRETTY GIRL, | Case No. 17-11600 (SHL) |
| Debtor. | |

------------------------------------------------------------x

| | |
|---|---|
| In re | Chapter 11 |
| | |
| 72 FASHION CORP. d/b/a PRETTY GIRL, | Case No. 17-11601 (SHL) |
| Debtor. | |

------------------------------------------------------------x

| | |
|---|---|
| In re | Chapter 11 |
| | |
| 1168 LIBERTY CORP. d/b/a PRETTY GIRL, | Case No. 17-11602 (SHL) |
| Debtor. | |

------------------------------------------------------------x

**DECLARATION OF ALBERT NIGRI, PURSUANT TO 28 U.S.C. § 1746,
IN SUPPORT OF THE MOTIONS OF THE DEBTORS AND DEBTORS IN
POSSESSION FOR THE ENTRY OF A FINAL ORDER (I) AUTHORIZING THE USE
OF CASH COLLATERAL AND (II) GRANTING ADEQUATE PROTECTION**

Albert Nigri declares, under penalty of perjury pursuant to 28 U.S.C. § 1746, that:

1. I am the sole shareholder of PGNY Sportswear, Inc. ("**PGNY**"), a non-debtor affiliate of Pretty Girl of Fordham Road Corp. d/b/a Pretty Girl, 72 Fashion Corp. d/b/a Pretty Girl, and 1168 Liberty Corp., the above-captioned debtors and debtors in possession (collectively, the "**Debtors**"). I also am the sole shareholder of the Debtors.

2. Pursuant to the request of the Office of the United States Trustee, I am submitting this Declaration in support of the Debtors' motions for the entry of a final order (i) authorizing the use of cash collateral and (ii) granting adequate protection.

3. In addition to PGNY and the Debtors, I also am the sole shareholder of twenty (20) non-debtor affiliate retail stores (the "**Stores**").[1] The Debtors also operate retail stores at their respective locations.

4. The proposed final budgets of the Debtors contain a line item for management fees (the "**Management Fees**"). The Management Fees historically have been paid weekly to PGNY by each of the Debtors and each of the Stores.

5. Each of the Debtors employs sales personnel and a store manager. Like each of the Stores, they do not provide their own administrative and management services and therefore do not employ administrative and management personnel. These services are provided by PGNY. Among such services are merchandising, inventory purchasing, warehousing, distribution, retail pricing, supervision, human resources, accounting and bookkeeping, insurance, logistics, information technology, and telecommunications services.

6. This business model is common among almost all multi-location retail store operators because it is the most efficient, allowing each individual store to benefit from the

---

[1] At the time the Debtor filed its petition, there were sixteen (16) non-debtor affiliated Stores. Since then, new Stores have opened, and at this time, there are 20 of them. However, the number fluctuates from time to time, as new stores open and existing stores close.

cost reductions associated with the economies of scale achieved by being one of a number of managed entities as opposed to an independently managed entity.

7. PGNY receives a Management Fee that is paid by each Debtor and each Store. The amount of the fee represents each such entity's pro rata share of the expenses incurred by PGNY in providing such services, including the salaries and wages of PGNY's employees, including myself. Each Debtor and each Store pays a fee equal to its pro rata share of revenue that each store generates in relationship to total store revenue. Therefore, if a Debtor accounts for five percent of total store revenue, it will pay a fee equal to five percent of PGNY's expenses. Thus, PGNY does not earn any profit in exchange for the services it provides to the Debtors or the Stores. Based upon my experience I believe that the amount of the Management Fee paid by the Debtors to be reasonable.

8. I am not an employee of any of the Debtors or the Stores and receive no compensation from them. I am employed and paid by PGNY. Through PGNY, I am responsible for administering the affairs of all 23 retail stores, including the Debtors. My compensation, which is a component of PGNY's expenses, is $500,000 annually. I estimate that the Debtors combined contribute approximately nineteen percent towards my compensation from PGNY; Pretty Girl of Fordham Road Corp. d/b/a Pretty Girl contributes about $1,060 per week, 72 Fashion Corp. d/b/a Pretty Girl contributes about $500 per week, and 1168 Liberty Corp. d/b/a Pretty Girl contributes about $340 per week.

9. The proposed final budgets of the Debtors also contain a line item for inventory. PGNY and three other affiliated entities, Mega Wear, Inc. ("**Mega Wear**"), Jasmine Sportswear, Inc. ("**Jasmine**") and Emma Footwear International Corp. ("**Emma**," and together with PGNY, Mega Wear, and Jasmine, the "**Affiliated Purchasers**"), purchase inventory for the

3

Debtors and each of the Stores from vendors that are affiliated as well as vendors that are not affiliated. The Affiliated Purchasers, in turn, sell this inventory to the Debtors and each of the Stores. I am also the sole shareholder of Mega Wear, Jasmine, and Emma.

10. Approximately seventy-five percent of all store inventory is purchased from non-affiliated vendors, all of which inventory the Affiliated Purchasers sell to the Debtors and each of the Stores at no markup whatsoever – the Affiliated Purchasers sell this inventory at the same price it pays for it.

11. Approximately twenty-five percent of all store inventory is purchased by the Affiliated Purchasers from affiliated vendors. These vendors are in the business of importing and manufacturing goods that they sell to the Affiliated Purchasers as well as non-affiliated customers. However, the Affiliated Purchasers sell these goods to the Debtors and each of the Stores at a lower markup than is charged to non-affiliated customers - the Debtors and each of the Stores are charged less for these goods than customers who are not affiliated.

12. The proposed final budgets of the Debtors also contain a line item for rent. Pretty Girl of Fordham Road Corp and 72 Fashion Corp. each rent their premises from non-affiliated landlords. 1168 Liberty Corp. rents its premises from an affiliated landlord; its landlord is 1168 Liberty Avenue RE 1 LLC, an affiliate by virtue of the fact that I am the sole and managing member of 1168 Liberty Avenue RE 1 LLC.

13. 1168 Liberty Corp. occupies its premises pursuant to the terms of a lease dated December 27, 2012, a copy of which is attached hereto. Notwithstanding the fact that the lease provides for an increase in the amount of rent reserved beginning in January 2014, 1168 Liberty currently pays $15,000 per month, which is the same amount of monthly rent reserved under the lease at the time it was executed. I believe the rent to be consistent with the market

rental value of the property and that, therefore, neither the tenant nor the landlord are benefitting from the fact that they are related to one another through my ownership of each.

14. I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
August 8, 2017

<u>/s/ Albert Nigri</u>
Albert Nigri