ROSEN & ASSOCIATES, P.C.
Proposed Attorneys for the Debtor
 and Debtor in Possession
747 Third Avenue
New York, NY 10017-2803
(212) 223-1100
Sanford P. Rosen
Alice P. Ko

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x

| | |
|---|---|
| In re | Chapter 11 |
| PRETTY GIRL OF FORDHAM ROAD CORP. d/b/a PRETTY GIRL, | Case No. 17-11600 (SHL) |
| Debtor. | |

-------------------------------------------------------------x

**NOTICE OF MOTION OF THE DEBTOR FOR THE ENTRY
OF AN ORDER APPROVING OF SETTLEMENT AGREEMENT
WITH THE LANDLORD, PURSUANT TO RULE 9019 OF THE
<u>FEDERAL RULES OF BANKRUPTCY PROCEDURE</u>**

PLEASE TAKE NOTICE that upon the annexed motion dated August 10, 2017 (the "**Motion**") of Pretty Girl of Fordham Road Corp. d/b/a Pretty Girl, the above-captioned debtor and debtor in possession (the "**Debtor**"), by its attorneys, Rosen & Associates, P.C., the undersigned will move at a hearing before the Honorable Sean H. Lane, United States Bankruptcy Judge, United States Bankruptcy Court, Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New York, NY 10004-1408, on **September 6, 2017 at 10:00 a.m. (prevailing Eastern Time)**, or as soon thereafter as counsel can be heard,

for the entry of an order approving of a settlement agreement between the Debtor and its landlord.

    PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, shall set forth the grounds for such objection with specificity, and shall be filed with this Court electronically in accordance with General Order M-399 (General Order M-399 and the Procedures for the Filing, Signing and Verification of Documents by Electronic Means can be found at www.nysb.uscourts.gov, the official website for the Bankruptcy Court) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest on a CD-ROM or other electronic media containing the document in PDF or other Windows-based word processing format (with a hard copy delivered directly to Judge Lane's chambers) and served in accordance with General Order M-399 upon (i) Rosen & Associates, P.C., proposed counsel to the Debtor, 747 Third Avenue, New York, NY 10017-2803, Attn.: Alice P. Ko, Esq. and (ii) the Office of the United States Trustee, 201 Varick Street, New York, NY 10014, Attn.: Andrea B. Schwartz, Esq. **so as to be received no later than August 30, 2017**.

Dated: New York, New York
    August 10, 2017

            ROSEN & ASSOCIATES, P.C.
            Proposed Attorneys for the Debtor
             and Debtor in Possession

            By: /s/ Alice P. Ko
               Alice P. Ko

            747 Third Avenue
            New York, NY 10017-2803
            (212) 223-1100

ROSEN & ASSOCIATES, P.C.
Proposed Attorneys for the Debtor
 and Debtor in Possession
747 Third Avenue
New York, NY 10017-2803
(212) 223-1100
Sanford P. Rosen
Alice P. Ko

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
In re                                                                               Chapter 11

PRETTY GIRL OF FORDHAM ROAD CORP.,          Case No. 17-600 (SHL)

        Debtor.
-------------------------------------------------------------x

**MOTION OF THE DEBTOR FOR THE ENTRY OF AN ORDER APPROVING OF SETTLEMENT AGREEMENT WITH THE LANDLORD, PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

TO THE HONORABLE SEAN H. LANE,
UNITED STATES BANKRUPTCY JUDGE:

   Pretty Girl of Fordham Road Corp., the above-captioned debtor and debtor in possession (the "**Debtor**"), by its proposed attorneys, Rosen & Associates, P.C., respectfully represents:

**JURISDICTION AND VENUE**

   1.  This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this Motion is a core proceeding pursuant to 28 U.S.C.

§ 157(b). Venue of this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## PRELIMINARY STATEMENT

2. The Debtor, by this Motion, seeks this Court's authorization to enter into and perform under a settlement agreement with its landlord (the "**Fifth Settlement Agreement**"), a copy of which is annexed hereto as Exhibit "A." A proposed order granting the relief sought hereby (the "**Approval Order**") is annexed hereto as Exhibit "B."

3. Under the Fifth Settlement Agreement, the landlord has agreed to extend, for the fifth time, the Debtor's right to use and occupy its premises in exchange for the Debtor's timely payment of agreed upon use and occupancy charges.

## BACKGROUND

4. On June 9, 2017 (the "**Petition Date**"), the Debtor commenced in this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

5. The Debtor is operating its business and managing its property as a debtor and debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. To date, no trustee, examiner or creditors' committee has been appointed.

6. The Debtor is a corporation organized under the laws of the state of New York. It maintains its corporate offices at 1407 Broadway, Suite 2300, New York, NY 10018 and also leases premises at 201-213 East Fordham Road, Bronx, NY 10458 (the "**Premises**").

7. At the Premises, the Debtor operates a retail store under the name "Pretty Girl" that sells fashionable junior, missy, and plus-size clothing, accessories, and footwear to price conscious women.

8. The Debtor is an affiliate of Pretty Girl, Inc. ("**Pretty Girl**"), which filed a voluntary petition under chapter 11 of the Bankruptcy Code in this Court on July 2, 2014 (*In re Pretty Girl, Inc.*, Case No. 14-11979 (SHL)). The chapter 11 case of Pretty Girl was converted to one under chapter 7 of the Bankruptcy Code on December 23, 2014.

9. The chapter 7 trustee of Pretty Girl's bankruptcy estate has commenced an adversary proceeding against the Debtor, *LaMonica v. Pretty Girl of Fordham Road Corp.*, Adv. Pro. No. 16-01559 (SHL), in which the trustee alleges breach of contract and seeks payment for goods that were allegedly sold and delivered but unpaid for, which is currently pending before this Court.

10. The Debtor also is an affiliate of 72 Fashion Corp. d/b/a Pretty Girl ("**72 Fashion**") and 1168 Liberty Corp. d/b/a Pretty Girl ("**1168 Liberty**"), both of which also filed chapter 11 cases on June 9, 2017, and 20 non-debtor affiliated stores (the "**Stores**"),[1] each of which is separately incorporated. Albert Nigri is the sole shareholder of the Debtor, Pretty Girl, 72 Fashion, 1168 Liberty, and the Stores.

11. The Debtor's assets consist of its inventory, which secures its guaranty obligation to repay indebtedness in the amount of approximately $300,000 (the "**Indebtedness**") of Pretty Girl to JPMorgan Chase, N.A. ("**Chase**"). The Indebtedness also is guaranteed by each

---

[1] At the time the Debtor filed its petition, there were sixteen (16) non-debtor affiliated Stores. Since then, new Stores have opened, and at this time, there are 20 of them. However, the number fluctuates from time to time, as new stores open and existing stores close.

3

of the Stores, 72 Fashion, and 1168 Liberty. PGNY, Inc., a non-debtor affiliate wholly owned by Mr. Nigri, and Mr. Nigri himself also are guarantors.

12. As of June 8, 2017, the Debtor's books and records reflect assets totaling approximately $192,000 and liabilities totaling approximately $657,000, exclusive of amounts due to Chase under its guaranty.

13. On or about March 21, 2017, the Marshal of the City of New York served the Debtor with a Notice of Execution informing the Debtor that an execution (the "**Execution**") against the Debtor's personal property had been issued as a result of a judgment entered in favor of the City of New York and against the Debtor in respect of certain Environmental Control Board violations in the case *City of New York v. Pretty Girl of Fordham Road Corp.*, Marshal's Docket No. P80030. The amount of the lien arising out of the judgment and Execution is $217,861.43 as of March 29, 2017.

14. As of the commencement of the Debtor's chapter 11 case, the Execution had not yet been carried out and the Debtor's property, therefore, has not been levied upon.

15. The Debtor commenced its chapter 11 case in order to continue to operate its business at the Premises and to maintain, protect, and preserve its property.

16. The Debtor previously commenced a case under chapter 11 of the Bankruptcy Code in this Court on May 7, 2015, *In re Pretty Girl of Fordham Road Corp.*, Case No. 15-11199 (SHL (the "**Prior Bankruptcy Case**"). That filing arose out of a dispute with the Debtor's landlord, Fordham Grand LLC (the "**Landlord**"), which had obtained a judgment and warrant of eviction against the Debtor in an action that had been commenced in the Civil Court

of the City of New York (the "**Eviction Action**"). The warrant of eviction had not yet been executed when the Debtor filed its previous chapter 11 petition.

17. Soon after commencing the Eviction Action, the Landlord commenced an action in the Supreme Court of the State of New York, County of Kings, against Mr. Nigri to enforce his June 27, 2000 guaranty of the Debtor's obligations under the lease of the Premises (*Fordham Grand LLC v. Albert Nigri*, Index No. 12451/2014 (N.Y. Sup. Ct., Kings Cnty.) (the "**Guaranty Action**")).

18. The Eviction Action and the Guaranty Action both were settled during the Prior Bankruptcy Case pursuant to the terms of the Debtor's first agreement with the Landlord (the "**First Settlement Agreement**"). Such settlement was approved and the Prior Bankruptcy Case was dismissed by order of this Court entered on December 2, 2015.

## THE PRIOR SETTLEMENTS

19. Under the terms of the First Settlement Agreement, the Debtor agreed to vacate the Premises no later than the fifth business day following this Court's approval of the First Settlement Agreement or January 30, 2016, whichever is later (the "**Vacate Date**") and pay the Landlord $300,000. The First Settlement Agreement also provided that the Debtor's security deposit of $66,666.66 would be remitted to the Landlord and Mr. Nigri, as guarantor, agreed to pay the Landlord $283,333.00, in installments, in settlement of the Guaranty Action.

20. Subject to the Debtor's and Mr. Nigri's performance under the First Settlement Agreement, the Landlord agreed to waive $176,666.66 of its claim of $826,666.66 against the Debtor and Mr. Nigri, deem its judgment satisfied, and dismiss the Guaranty Action

5

with prejudice. Subsequent to the dismissal of the Prior Bankruptcy Case, the Debtor and Mr. Nigri fulfilled their respective payment obligations under the First Settlement Agreement.

21. Subsequent to the dismissal of the Prior Bankruptcy Case by this Court's order of December 2, 2015, and prior to the commencement of this bankruptcy case, the parties entered into three more stipulations under which, in essence, the Landlord agreed to extend the Vacate Date to September 5, 2016, January 1, 2017, and July 4, 2017, respectively. Each stipulation also fixed the amount of use and occupancy charges that were to be paid by the Debtor for the period covered by the respective stipulation. The Debtor timely satisfied all of its obligations under these stipulations, which are annexed hereto as Exhibits "C," "D," and "E," respectively.

## RELIEF REQUESTED

22. By this Motion, the Debtor seeks the entry of an order approving the Fifth Settlement Agreement, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure.

23. Under the Fifth Settlement Agreement, the Landlord has agreed to stay the execution of its warrant of eviction and to further extend the Vacate Date for six months, until January 1, 2018. The Debtor has agreed to pay use and occupancy charges of $50,000 for the months of July, August[2] and September 2017, and $40,000 per month for the months of October, November and December 2017. The Debtor, however, is not obligated to pay such use and occupancy for the entire six months – it may vacate the Premises at any time on ten (10) days' notice and terminate any liability arising subsequent to the expiration of such notice period.

---

[2] The Landlord has agreed to reduce the August use and occupancy charge by $5,000 as a means of reimbursing the Debtor for its legal fees and expenses incurred in the negotiation, documentation and obtaining this Court's approval of the Fifth Settlement Agreement.

24. If, however, the debtor defaults in its payment obligations, then, subject to the Debtor's failure to cure upon the expiration of the Landlord's issuance of a 5-day notice to cure and/or failure to timely vacate the Premises, the Landlord will be able to proceed to execute upon its warrant of eviction and evict the Debtor from the Premises. In addition, the Landlord will have the right to enter a judgment against the Debtor and Mr. Nigri for amounts due, but not paid, under the Fifth Settlement Agreement. The Approval Order will provide relief from the automatic stay of section 362 of the Bankruptcy Code upon its entry, so that the Landlord may proceed, if necessary, to execute on the warrant of eviction.

25. As to the Debtor, the judgment will be the basis upon which the Landlord may file a proof of claim in the Debtor's case and the Landlord will take no action outside of the Debtor's bankruptcy case to collect the judgment; it only will be entitled to a distribution on its filed claim.

26. The Debtor has agreed not to seek the reinstatement of the automatic stay as to Landlord's execution of the warrant of eviction in this case or file another petition for relief under any chapter of the Bankruptcy Code for a period of three years from the date of the Approval Order.

## LEGAL AUTHORITY

**The Court Should Approve the Settlement Agreement**

27. Bankruptcy Rule 9019(a) provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). In *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-425, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968), the United States

Supreme Court held that the approval of a compromise or settlement requires a determination by the bankruptcy court that it is fair and equitable. Such approval also requires a determination that the compromise or settlement is in the best interests of the estate. *Geltzer v. The Original Soupman Inc., et al (In re Soup Kitchen International)*, 506 B.R. 29, 37 (Bankr. E.D.N.Y. 2014).

28. In this Circuit, courts have developed "standards to evaluate if a settlement is fair and equitable, and, to that end . . . have set forth factors for approval of settlements based on the original framework announced in *TMT Trailer Ferry*." *Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 462 (internal citations omitted). These factors are as follows:

   a. the balance between the litigation's possibility of success and the settlement's future benefits;

   b. the likelihood of complex and prolonged litigation, including the expense, delay, and difficulty in collecting on the judgment;

   c. the interests of creditors, including whether they support the settlement;

   d. whether other parties in interest support the settlement;

   e. the competency and experience of the attorneys supporting the settlement;

   f. the nature and breadth of releases to be obtained by officers and directors; and

   g. whether the settlement is the result of arm's length bargaining.

*In re Iridium Operating LLC*, 478 F.3d at 462.

29. It is well settled that "[a] bankruptcy court need not conduct an independent investigation into the reasonableness of the settlement . . . . It is not necessary for

8

the court to conduct a 'mini-trial' of the facts or the merits underlying the dispute." *In re Chemtura Corp.*, 439 B.R. 561, 594 (Bankr.S.D.N.Y.2010) (citations omitted). Rather, the court fulfills its responsibility by "canvass[ing] the issues and see[ing] whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir.1983) (alteration in original) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir.1972)).

30. Although a bankruptcy court has discretion to approve a settlement, it "may rely on the opinion of the debtor, parties to the settlement, and the professionals." *In re Residential Capital, LLC*, 497 B.R. 720, 750-51 (Bankr. S.D.N.Y.2013) (citing *In re Chemtura Corp.,* 439 B.R. 561, 594 (Bankr.S.D.N.Y.2010); *In re Purified Down Prods. Corp.,* 150 B.R. 519, 522–23 (Bankr.S.D.N.Y.1993); *MF Global Inc.,* No. 11-2790, 2012 WL 3242533, at *5 (Bankr. S.D.N.Y. Aug. 10, 2012) (recognizing that although courts have the discretion to approve settlements, the business judgment of the debtor in recommending a settlement should be considered)).

31. While the decision to approve a settlement lies within the "sound discretion" of the bankruptcy court, *Original Soupman*, 506 B.R. at 37 (citing *In re Adelphia Commc'ns Corp.*, 368 B.R. at 226, "'[i]t is not the court's task to determine whether the settlement proposed by the parties is the best possible, or fairest, or most appropriate resolution of the dispute.'" *Id.* (quoting *O'Connell v. Packles (In re Hilsen)*, 404 B.R. 58, 70 (Bankr. E.D.N.Y.2009)).

32. The Settlement Agreement satisfies the *Iridium* test because it is indisputably in the best interest of the Debtor's creditors and all parties in interest. Here, there is

no case to litigate - the Debtor's lease for the Premises terminated long ago and its right to occupy the Premises depends entirely upon the willingness of the Landlord to permit the Debtor to remain in possession and, subject to the Debtor's payment of use and occupancy, stay its warrant of eviction.

33. Without the Fifth Settlement Agreement, the Landlord would be entitled to stay relief to evict the Debtor and that would be the death knell of its chapter 11 case. On the other hand, given the ability to remain in possession, the Debtor can continue to conduct its business in the ordinary course and, through profitability, earn the funds necessary to enable it to confirm a plan of reorganization.

34. Given the common interests of all creditors to receive as much as possible in payment of their claims, the Debtor is confident that all creditors, including Chase, will support this Court's approval of the Fifth Settlement Agreement.

**NO PRIOR REQUEST**

35. No prior request for the relief sought in this Motion has been made to this or any other Court.

**NOTICE**

36. Notice of this Motion shall be given to: (a) the Office of the United States Trustee for Region 2; (b) the Landlord, in care of its counsel, (c) all creditors of the Debtor who are listed on the schedules filed by the Debtor or who have filed proofs of claim against the Debtor's estate; and (d) all parties in interest who have requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. The Debtor respectfully submits that no other or further notice is required.

WHEREFORE, the Debtor respectfully requests that this Court: (a) enter an order granting the relief sought herein; and (b) grant it such other and further relief as it deems just and proper.

Dated: New York, New York
August 10, 2017

                                              ROSEN & ASSOCIATES, P.C.
                                              Proposed Attorneys for the Debtor
                                               and Debtor in Possession

                                              By: /s/ Alice P. Ko
                                                     Alice P. Ko

                                             747 Third Avenue
                                             New York, NY 10017-2803
                                             (212) 223-1100